FRED MACEY CO. *v.* MACEY.

CANCELLATION OF INSTRUMENTS — CONTRACTS — CORPORATIONS —
PROMOTERS—EVIDENCE—SUFFICIENCY.

On a bill by a corporation to cancel a contract entered into by
its promoters without the knowledge of new subscribers to
the stock, evidence examined, and *held,* to preponderate in
favor of the allegations of the bill and authorize a decree for
complainant.

Appeal from Kent; Wolcott, J. Submitted February
25, 1908. (Docket No. 131.) Decided March 31, 1908.

Bill by the Fred Macey Company, Limited, against
Frank Macey to obtain the cancellation of an agreement
for the payment of royalties. From a decree for com-
plainant, defendant appeals. Affirmed.

*Taggart, Denison & Wilson,* for complainant.

*Crane & Norris,* for defendant.

MOORE, J. This case has been before this court on de-
murrer to the bill of complaint. The demurrer was over-
ruled; the case is reported in 143 Mich. 138. After the
demurrer was overruled the defendant answered and
proofs were taken in open court before Honorable Alfred
Wolcott, circuit judge, who rendered a decree in favor of
the complainant. Defendant has again appealed to this
court.

A reference to the opinion when the case was here be-
fore will show a full statement of the allegations of the
bill of complaint, and will make it unnecessary to restate
them here. Judge Wolcott, before whom the case was
tried, prepared a written opinion which is as follows:

"Without reviewing the case at length, I am of the
opinion that sufficient of the material facts alleged in the

bill of complaint have been established by the evidence to entitle the complainant to the relief prayed for in the bill. The royalty contract, called Exhibit D, was not originally a contract with The Fred Macey Company, Limited. It seemed to contemplate an obligation to be assumed by that company, but the company was not a party to it, and could only become bound by it by adoption or ratification, or acceptance of benefits under it, with knowledge of its existence and obligation. The evidence sufficiently shows that the existence of this contract was not known to the new stockholders, nor to the managers of the company, excepting to the three who signed it, until about a year after the company was organized and doing business. The company, through its managers, on learning of the existence of the contract, or soon thereafter, protested against being bound by it, and sought by negotiation with defendant to be relieved of it. Failing in this, and in October, 1903, it passed a resolution distinctly declaring that it was not liable thereunder.

"Under all the evidence in the case, I think it is apparent that the defendant's connection with the organization of the new company was such that he, as well as Fred Macey and Charles W. Matheson, held a fiduciary relation to the new stockholders and the new company that would not permit the defendant to profit by a secret contract of which the new stockholders had no knowledge. It was a contract which the defendant claims contemplated a large and increasing liability and burden upon the profits of the new company. The prospectus to which the defendant's name was attached, contained no reference to this contract, but was so framed as to lead a prospective purchaser of stock to believe that the new company was to acquire all the property without debts or liability. The fact that the defendant did not exhibit the prospectus, so far as the evidence shows, and took no active part in securing subscriptions, but left that portion of the work to his associates, gives him no better right to take advantage of the contract.

"I do not find from the evidence anything that can be considered an acceptance or ratification of the contract on the part of the complainant after it had knowledge of the contract and its terms. The evidence does not show with any certainty the value to the complainant of the use of the patents formerly owned by the defendant, nor of the value of the foreign patents lost by failure to pay

renewal fees. It does not appear that it exceeds the amount drawn by the defendant on the royalty contract.

"In the negotiations prior to bringing suit looking to an adjustment of the matter in dispute, it was recognized by the complainant that the defendant had served in its employ at a less salary than he would have done had it not been for this contract. The evidence furnishes no very certain basis on which to adjust the rights of the parties as to the moneys drawn by the defendant on the contract, the use by complainant of the patents and the loss of foreign patents. I think it may be considered that the amount drawn by the defendant on the contract is a fair equivalent of the benefit to complainant of the use of his patents and the value of his services above the salary he received, and the loss to him of such foreign patents as have been forfeited.

"It is the opinion of the court that the complainant should have a decree that the contract in question did not become the contract of the complainant, and created no liability against it, that the complainant reassign or return to the defendant the patents now held by it which belong to the defendant, that the defendant's cross-bill be dismissed, and that the complainant recover costs."

The law of the case was fully discussed and clearly settled when the case was here before. The questions involved now are purely questions of fact. The record is a very long one. We have careful briefs prepared by eminent counsel. An extension of time was granted for the oral argument. It would profit no one to set out in detail the evidence tending to show the conflicting claims of the parties. The complainant is of course bound to show by a preponderance of the evidence the truth of the allegations made in its bill of complaint. We think it has fully done so.

The decree is affirmed.

GRANT, C. J., and HOOKER, CARPENTER, and McALVAY, JJ., concurred.